## Napier v. Napier.

December 10, 1946.

Floyd Taylor for appellant.
W. L. Hammond and Grant F. Knuckles for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellee, Bonnie Jean Napier, instituted this action in April of this year seeking a divorce from her husband, Andrew Jackson Napier, on the ground of cruel and inhuman treatment. In his counterclaim Mr. Napier sought a divorce on the grounds of cruel and inhuman treatment and lewd and lascivious conduct on the part of his wife. The chancellor granted Mrs. Napier a divorce and awarded her the custody of their two infant children; one three years of age and the other 19 months, and allowed her $30 a month for their support. He also restored to her all of her personal belongings and furniture.

This was the second marital venture of the parties. They remarried a short time after Mr. Napier had been granted a divorce and lived together about 10 months. In the first action Mr. Napier accused his wife of running around with Gillis Smith. Smith was the cause of the second separation. The testimony for Mr. Napier showed that after the parties remarried Mrs. Napier and Smith were seen together on several occasions and sometimes under compromising circumstances. Mrs. Napier denied being with Smith except on one occasion and that was the day she was seen by her husband in Smith's taxi in Pineville. She admitted attempting to keep him from seeing her, but said she did so because he had been continuously accusing her of running around with Smith. Her statement was that the only reason she agreed to the remarriage was she thought they ought to try to maintain a satisfactory home for their children and that Mr. Napier had agreed not to say anything further about Smith. His statement on the other hand was to the effect that Mrs. Napier had repented and had agreed to have nothing more to do with Smith.

Mr. Napier vigorously contends that he should have been awarded a divorce and the custody of the children. The case is rather an unusual one in that in the former action the same chancellor had granted Mr. Napier a divorce. Smith was the storm center in both actions. The chancellor knew the parties and was well aware of the marital difficulties of the Napiers, so we are not prepared to say he erred in ruling as he did on the divorce ques-

tion, though it must be admitted there is considerable evidence in the record concerning the activities of Mrs. Napier and Smith.

The custody of the two young children has given us considerable concern. In addition to the attacks on Mrs. Napier's character there is evidence showing that the home of Mr. and Mrs. Homer Storms, appellee's brother and sister-in-law, where she has the children, is not a suitable one for their upbringing. Charges are made against both the brother and sister-in-law, as well as the manner in which their home is conducted. Mr. Napier seems to be an industrious and hardworking man, making about $300 a month. He is well able to support the children, and there is nothing in the record which would indicate that the home of his parents, where he planned to keep them had he been awarded their custody, is not a suitable one.

There are numerous rulings of this Court to the effect that the custody of children of tender years will be awarded the mother unless it be shown that she is not a suitable person to care for them or through peculiar circumstances is unable to furnish them a good home. Callahan v. Callahan, 296 Ky. 444, 177 S. W. 2d 565. The chancellor did not see fit to award Mrs. Napier any alimony and made a very modest allowance for the support of the children. Under the circumstances, very careful attention should be given to their welfare. While we have some doubt as to the correctness of the ruling relative to the custody of the children, we are not disposed to overturn it, since we feel confident that, in the event it is shown that Mrs. Napier is not conducting herself properly, or that the Storms home is not a suitable place for them, the chancellor will take the necessary steps to see that the children are properly cared for. In view of the circumstances presented in this record it would probably be better if some definite plan of visitation for the children with Mr. Napier were provided rather than a "reasonable time not to exceed two weeks duration." This of course the chancellor can do at any time.

It follows from what has been said that we are of the opinion that the judgment should be and it is affirmed.